# Illinois Official Reports

## Supreme Court

*Seymour v. Collins*, 2015 IL 118432

| | |
|---|---|
| Caption in Supreme Court: | TERRY L. SEYMOUR *et al.*, Appellants, v. BRADLEY A. COLLINS *et al.*, Appellees. |
| Docket No. | 118432 |
| Filed | September 24, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Winnebago County, the Hon. J. Edward Prochaska, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | William T. Cacciatore and Eileen J. McCabe, of Rockford, for appellants. |
| | Jeffrey J. Zucchi, of Clark, Justen, Zucchi & Frost, Ltd., of Rockford, for appellee Bradley A. Collins. |
| | Lori E. McGirk, of Guyer & Enichen, P.C., of Rockford, and Jennifer A. Moriarty, of Grant & Fanning, of Chicago, for appellees Rockford Country Club *et al*. |
| | Michael Resis and Marcie Thorp, of SmithAmundsen LLC, of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel. |

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1     The overarching issue presented in this appeal is whether the circuit court erred in granting defendants summary judgment, dismissing plaintiffs' personal injury action, pursuant to the court's application of the doctrine of judicial estoppel. A divided panel of the appellate court affirmed the judgment of the circuit court. 2014 IL App (2d) 140100, ¶ 50. We granted plaintiffs' petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2013)) and now reverse the judgments of the appellate court and circuit court.

¶ 2                                    BACKGROUND

¶ 3     Plaintiffs, Terry L. Seymour and Monica Seymour, filed this personal injury action in the circuit court of Winnebago County on May 20, 2011, alleging negligence and loss of consortium, and seeking money damages, initially from two defendants, Bradley A. Collins and Rockford Country Club (Rockford). Terry's alleged injuries were said to have been sustained in a June 3, 2010, automobile accident. Plaintiffs alleged, on that date, Terry was being transported in an ambulance owned by ATS Medical Services, Inc. (ATS), and driven by Shaun P. Branney—and in which Terry was attended by Leo Verzani—when the ambulance collided with a vehicle driven by Bradley A. Collins, who was allegedly operating his vehicle within the scope of his employment with Rockford. Plaintiffs subsequently amended their complaint to claim that defendants, ATS, Branney, and Verzani were also legally responsible for Terry's alleged injuries.

¶ 4     Also pertinent to the issue before us is the bankruptcy proceeding the Seymours had previously commenced on April 24, 2008, with the filing of a petition for chapter 13 bankruptcy (11 U.S.C. § 1301 (2006)) in the United States District Court for the Northern District of Illinois. The record indicates that a chapter 13 plan was confirmed on September 19, 2008, though the plan itself does not appear in this record. Docket entries from the bankruptcy proceeding *were* submitted as evidence in this case and show multiple motions filed by the Seymours to modify the plan. The motions have not been made a part of the record.

¶ 5     The first motion was filed on January 7, 2009. A docket entry indicates that the motion was granted on January 30, 2009. On that same date, an entry evinces an "Order Withdrawing Motion to Dismiss Case for Failure to Make Plan Payments." On August 8, 2009, another motion was filed to modify the plan. That motion was accompanied by the Seymours' filing of amended bankruptcy schedules. An order was entered on August 28, 2009, granting the motion to modify.

¶ 6     The third motion to modify was filed on February 25, 2010. Docket entries indicate that a response was filed on March 3, 2010, on behalf of the chapter 13 trustee, Lydia Myer, and the motion to modify was granted on March 19, 2010. In their brief before this court, plaintiffs state: "The March 19, 2010 plan modification entailed a reduction in the monthly payment amount as TERRY L. SEYMOUR had sustained an unrelated work injury in May, 2009, and

was only receiving temporary total disability benefits." Plaintiffs' brief cites to an affidavit subsequently filed in this case by their bankruptcy attorney. That affidavit does not specifically link the March 2010 modification to the alleged injury and reduction in income; however, it does reference a May 2009 injury and a related workers' compensation claim "subsequent to the date of filing of [the] Chapter 13 proceeding." Moreover, an affidavit filed in this case by Myer references a motion to modify wherein it is stated "that the Debtor was injured at work and unable to work and receiving only worker's compensation benefits since May of 2009." In any event, the parties apparently do not dispute that the Seymours sought modification via the February 25 motion, alleging that Terry was unable to work and was only receiving workers' compensation payments, and the bankruptcy plan was modified on March 19, 2010.[1]

¶ 7        Apparently, it is also undisputed that Terry had not advised the bankruptcy court that he was again working when, on June 3, 2010, he was allegedly injured, twice. The first injury was said to have occurred while he was working for a new employer. As a result of that injury, he was being transported by ambulance when the ambulance collided with a vehicle driven by Collins, allegedly resulting in additional injuries to Terry and this lawsuit against the various defendants.

¶ 8        Prior to the notice of completion of the payment plan filed by the bankruptcy trustee on June 29, 2012, and the order of discharge in bankruptcy granted the Seymours on July 17, 2012, they filed two change of address forms with the bankruptcy court. However, it is apparently undisputed that they never apprised the bankruptcy court that their circumstances had changed subsequent to the March 19, 2010 modification. Specifically, they never informed the bankruptcy court: (1) that Terry had returned to work for a new employer; (2) that he was injured on June 3, 2010; (3) that Terry had, on June 8, 2010, filed another workers' compensation claim, this one related to the June 3 injuries; (4) that Terry believed he had viable personal injury claims against multiple defendants as a result of the June 3, 2010, accident; and (5) that he had in fact filed suit in state court against those defendants on May 20, 2011, asserting his legal claims.

¶ 9        On July 18, 2013, defendants in this action moved for summary judgment, contending that plaintiffs should be judicially estopped from proceeding with their claims because they failed to disclose their personal injury action in the bankruptcy proceeding.

---

[1]As we may take judicial notice of public documents which are included in the records of other courts (*May Department Stores Co. v. Teamsters Union Local No. 743*, 64 Ill. 2d 153, 159 (1976))—and the defendants' subsequently filed motion for summary judgment in this case urged the circuit court to take judicial notice of the bankruptcy court's records—we note that the motion in fact alleged that Terry was injured and had "been unable to work and receiving only workmen's compensation benefits since May 2009." The Seymours stated that they had fallen behind in payment of their monthly living expenses and they sought to retain the entirety of their tax refunds for the year 2009. They suggested if that relief were granted, "they would be able to make future payments to the Trustee and complete their Chapter 13 Plan within the time allowed by law." An order, modifying the plan, appears in the bankruptcy court's records. It is dated March 19, 2010, and allows only for retention of the 2009 income tax refunds, specifying that "all other provisions of the Debtors' Chapter 13 Plan shall remain in full force and effect." Based on the records we have reviewed, the discrepancy, and the court's and parties' position on this matter, is perplexing.

- 3 -

¶ 10　　　　Plaintiffs responded that judicial estoppel does not apply because they did not assert, under oath, in the bankruptcy proceeding that they did not have a personal injury case, they did not intentionally fail to disclose the claims, and they did not obtain a benefit in the bankruptcy proceeding by reason of the omission. In support of their response, plaintiffs submitted their own affidavits as well as the affidavits of chapter 13 trustee, Lydia Myer, and their bankruptcy attorney, Jeffrey Dahlberg.

¶ 11　　　　In their affidavits, plaintiffs stated, *inter alia*, that Myer had told them "at the [section] 341 meeting" that they were "required to report to [their] attorney and to the Trustee, any lump sum funds received in excess of $2,000.00 during the pendency of the Chapter 13 bankruptcy proceeding." Plaintiffs averred that they did not receive any lump sum funds in excess of $2,000.00 during the pendency of the chapter 13 bankruptcy proceeding, as a result of the personal injury action or otherwise.[2]

¶ 12　　　　In her affidavit, Lydia Myer stated that she had been the chapter 13 trustee of the District Court of the Northern District of Illinois since 1995. She served in that capacity in the Seymours' bankruptcy case. Myer attested that the plan for the chapter 13 bankruptcy was confirmed on September 19, 2008, and was modified multiple times thereafter. She indicated that Terry Seymour had filed a motion to modify on March 19, 2010,[3] stating that he had been injured at his job and was unable to work. As a consequence, he had been receiving only workers' compensation benefits since May of 2009. In a separately numbered paragraph, without correlative reference, Myer stated that workers' compensation proceeds, "pursuant to Illinois Compiled Statutes, are specifically exempt from bankruptcy."

¶ 13　　　　Myer represented:

> "That as the Chapter 13 Trustee *** all debtors are required by and through their attorneys, to report to me, as trustee, any and all cash or monies received during the Chapter 13 bankruptcy proceeding other than the income listed on the debtor's Schedule I.
>
> 　　That neither the Bankruptcy Code nor the Bankruptcy Rules require a Chapter 13 debtor to disclose the acquisition of any property interest after confirmation of his Chapter 13 plan except if the debtor acquires or becomes entitled to acquire within 180 days after the date of the filing of the petition, property by bequest, device [*sic*], or inheritance, or property received as the result of a property settlement agreement with the debtor's spouse or of an interlocutory or final divorce decree; or funds received as a beneficiary of life insurance policy or of a death benefit plan. (11 U.S.C. § 541 and Bankruptcy Rule 1007(h))."

Myer concluded with her observation that "11 U.S.C. 1322(d)(1) provides that a Chapter 13 plan may not provide for payments over a period that is longer than 5 years."

¶ 14　　　　In his affidavit, the Seymours' bankruptcy attorney, Jeffrey Dahlberg, first attested to his experience in chapter 13 bankruptcies, and confirmed relevant filing dates in the bankruptcy proceeding. Dahlberg recited his file notation that Terry had been injured, resulting in a

---

[2]They did receive a tax refund in excess of $2,000, but they reported it and were granted leave to keep it.

[3]The bankruptcy docket entry indicates that the order *granting* the motion was entered on that date. The order filed in the bankruptcy court also bears that date.

workers' compensation claim around May of 2009, a date subsequent to the date of filing his chapter 13 proceeding. His personal injury claim, arising from an automobile accident, was also subsequent to the commencement of the bankruptcy proceeding. Dahlberg noted that Meyer advises debtors at the section 341 meeting that they are required to report any lump sum funds received in excess of $2,000.00 during the pendency of the bankruptcy proceeding. Dahlberg stated that nothing in the Bankruptcy Code would prohibit this case from going forward as the personal injury and workers' compensation claims were unliquidated. Dahlberg concluded "because Mr. Seymour's claims *** arose subsequent to the filing of his Chapter 13 and because he did not receive any lump sum funds as a result of the claims during the pendency of the Chapter 13, the Chapter 13 Trustee will make no claim on future funds which may be generated by resolution of those claims as the case has closed with discharge."

¶ 15    On November 15, 2013, the circuit court entertained oral argument on defendants' motion for summary judgment. In the course of that hearing, counsel for Rockford asserted the following:

> "[O]n March 19, 2010, the Chapter 13 bankruptcy was modified. It was to advise the bankruptcy court that the plaintiff had a workers' comp. injury and possible assets from the May 2009 injury.

> * * *

> So what happened was this discharge was pending during the time that this litigation was pending and the plaintiff knew he had to advise the bankruptcy court of a workers' comp. claim because he had previously modified his plan to advise them, and yet after this injury, there's no similar notification to the bankruptcy court that there's now yet another injury and potential lawsuit, another asset that has become a part of the bankruptcy estate.

> And that's where the judicial estoppel is coming in. We're telling the Court that the plaintiff knew. This wasn't a mistake or mere inadvertence. The plaintiff knew that he had a duty to disclose, which is why he filed to modify the plan after the first workers' comp. injury."

¶ 16    After hearing argument on the motion for summary judgment, the court took the matter under advisement and ultimately issued a written order granting defendants summary judgment. In that order, the circuit court observed, *inter alia*, that: (1) plaintiffs filed for modifications of the plan after its confirmation, and before discharge, but never disclosed the "work injury and/or the motor vehicle accident that occurred on June 3, 2010"; (2) "[p]laintiffs' counsel sent a letter to all parties in the instant case seeking to mediate and settle the case [during the pendency of the bankruptcy proceeding]"; and (3) during the pendency of the bankruptcy case, plaintiffs never made any amendments to their schedules or statement of financial affairs disclosing the existence of this action.

¶ 17    The court then spoke to applicable legal standards. The court noted that summary judgment is properly entered only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court acknowledged that summary judgment is not appropriate where "reasonable persons might draw different inferences from the undisputed facts." The court observed that "[s]ummary judgment is appropriate when judicial estoppel applies," and judicial estoppel "is an equitable doctrine invoked by the court at its

discretion." The court recited the prerequisites generally required for the invocation of judicial estoppel, and concluded with this seemingly inflexible rule:

" 'In [the] bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements.' *Hamilton*, 270 F.3d at 783; see also *Dailey*, 684 N.E.2d at 995-96."

¶ 18    The court then stated, unequivocally, in the first sentence of its "Analysis and Decision," "the Court finds that Plaintiffs' failure to disclose this case as a potential asset in their Bankruptcy case judicially estops them from seeking a monetary judgment against the Defendants." The court cited federal case law requiring disclosure of this type of action in a bankruptcy proceeding, noted that plaintiffs became aware of their "potential cause of action" while their bankruptcy was pending, and observed that they had filed amendments to their bankruptcy schedules, but "never alerted the bankruptcy court to the instant action." Based upon those undisputed facts, the court stated: "The Court can only conclude that Plaintiffs were attempting to hide this asset from their bankruptcy creditors."

¶ 19    Addressing the affidavit of the bankruptcy trustee, Lydia Myer, the court stated: "With due respect to Ms. Myer, the Court completely disagrees with the argument posited by Plaintiffs that because they believed their personal injury cause of action was an exempt asset, they had no duty to disclose it in their bankruptcy case. [D]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." The court inferred that the 2010 modifications sought by plaintiffs in the bankruptcy proceeding "establish[ed] that the Plaintiffs were aware that the Bankruptcy Court had to be advised that the Plaintiff, Terry Seymour, had suffered personal injuries in May, 2009, and therefore the estate had an interest in property relating to that occurrence." The court continued: "This awareness is evidenced [*sic*] by the March 19, 2010, motion to modify the plan already put in place, which would allow Plaintiffs to claim an exemption, would give the bankruptcy trustee time to review the claim for exemptions, and would allow creditors time to object to the modification and the ensuing possible exemptions of any monies received pursuant to that occurrence." According to the court, plaintiffs "knew they needed to include all of the estate's assets in their plan, including the after-acquired property interest, which is why they filed a motion to modify the plan on March 19, 2010." The court concluded its order with this statement: "Because [plaintiffs] failed to disclose their personal injury claims in their bankruptcy case, as they were legally required to do, the Court finds that they are judicially estopped from proceeding on their claims against defendants."

¶ 20    A divided panel of the appellate court affirmed the judgment of the circuit court. 2014 IL App (2d) 140100, ¶ 50. The court, initially, recited the five elements generally required for application of judicial estoppel, as we enumerated them in *People v. Runge*, 234 Ill. 2d 68, 132 (2009) (2014 IL App (2d) 140100, ¶ 25), and noted that plaintiffs contended defendants failed to establish three of them: that plaintiffs took factually inconsistent positions in the two proceedings, that they intended for the bankruptcy court to accept the truth of the facts alleged, and that they obtained a benefit in the bankruptcy proceeding. *Id.* ¶ 26.

¶ 21    The court first found, summarily, that the plaintiffs took inconsistent positions insofar as they "failed to disclose, in the bankruptcy proceeding, the existence of their personal injury

claims," while, contemporaneously, "relying on the existence of those claims, they prosecuted their personal injury action in the trial court." *Id.* ¶ 27.

¶ 22 The court next addressed the question of whether plaintiffs intended that the bankruptcy court accept the fact that they did not have such claims. The appellate majority agreed with plaintiffs that the documents submitted to the bankruptcy court did not require them, therein, to disclose their postconfirmation cause of action, and that "[p]laintiffs' failure to include such information on those forms thus *did not evince that they intended to deceive the bankruptcy court* regarding the existence of their personal injury claims." (Emphasis added.) *Id.* ¶ 28. However, the court concluded: "That does not mean *** that defendants did not establish that element of judicial estoppel." *Id.*

¶ 23 The majority went on to cite federal authority imposing a continuing duty of disclosure, in a bankruptcy proceeding, of all property acquired postpetition, including legal claims. *Id.* ¶ 29. The appellate court noted that plaintiffs did not disclose the existence of their personal injury claims, despite a clear duty to do so. The court stated:

"Moreover, when it inured to their benefit, they promptly notified the bankruptcy court of their changed financial condition due to Terry's May 2009 work-related injury and loss of income and sought a lower payment schedule via a modification of the plan. Those facts show that plaintiffs knew that they had a continuing duty to disclose any changed financial conditions that might affect the plan. Yet, when Terry went back to work and was injured again, only a few months after receiving the plan modification, they never notified the bankruptcy trustee or the court. Plaintiffs cannot now claim that they were oblivious to their continuing duty to disclose all assets acquired during the pendency of the bankruptcy proceeding." *Id.* ¶ 30.

"Absent some affirmative statement by the trustee that they did not need to disclose such an asset, their reliance on the [trustee's] information regarding any cash assets exceeding $2,000 did not justify their failure to disclose their personal injury claims." *Id.* ¶ 31.

The court concluded, in light of plaintiffs' "clear duty to disclose their personal injury claims, their failure to do so evinced their intent that the bankruptcy court accept the fact that no such claims existed. Therefore, defendants established that element of judicial estoppel." *Id.* ¶ 32.

¶ 24 The appellate majority next considered the question of whether defendants established the element that plaintiffs received some benefit in the bankruptcy proceeding from their failure to disclose their personal injury claims. Citing an unreported federal district court decision, the majority stated that ongoing disclosure is required in a chapter 13 proceeding so that creditors can object to, or seek modification of, a confirmed plan. *Id.* ¶ 34 (citing *Woodard v. Taco Bueno Restaurants, Inc.*, No. 4:05-CV-804-Y, 2006 WL 3542693, at *10 (N.D. Tex. Dec. 8, 2006)). The court cited an Illinois appellate panel's decision in *Shoup v. Gore*, 2014 IL App (4th) 130911, for the proposition that the "benefit-received requirement of judicial estoppel" is satisfied where a plaintiff fails to disclose a postconfirmation personal injury suit insofar as such a plaintiff has " 'his repayment plan established and performed without giving his creditors any knowledge of his potential to recover damages in his personal-injury action' " (2014 IL App (2d) 140100, ¶ 34 (quoting *Shoup*, 2014 IL App (4th) 130911, ¶ 17)), thus denying creditors the opportunity to "object to, or seek modification of, the plan." *Id.* Moreover, the court observed, as in *Shoup*, the failure to disclose left plaintiffs with the ability

- 7 -

to permanently avoid their debts (via discharge) and yet receive a judgment against the defendants in the personal injury case. *Id.* ¶ 35.

¶ 25    The majority rejected plaintiffs' contention that the trial court abused its discretion—or failed to exercise it at all—insofar as the circuit court did not demonstrate any analysis of the elements of judicial estoppel and in effect made a "blanket finding" that, because they failed to disclose their personal injury action in the bankruptcy court, they were judicially estopped from maintaining that action. The majority found it sufficient that the circuit court had allowed argument at a hearing of the matter and stated, in its written order, that it had reviewed the " '[m]otion, briefs, affidavits, exhibits, relevant case law, and *** arguments.' " *Id.* ¶¶ 37-39. The appellate majority also found it significant that the circuit court, citing *Runge*, identified the five elements of judicial estoppel. *Id.* ¶ 40.

¶ 26    The majority then directly addressed the primary points made by the dissent. The court, first, rejected the dissent's contention that a false statement *under oath* was required for judicial estoppel to apply, noting that this court in *Runge* did not expressly require that the factual position be taken under oath; rather, this court "phrased the element more broadly to include any factual assertion that a party intends for the court to accept as true." *Id.* ¶ 42. Second, the appellate court found "ample evidence" for the trial court to have found "that plaintiffs intended to deceive the bankruptcy court by not disclosing the lawsuit." *Id.* ¶ 43. The appellate court emphasized "the critical fact that plaintiffs promptly disclosed the existence of Terry's first workers' compensation case when it advantaged them but failed to disclose the second such case when it appeared likely that it would disadvantage them." *Id.* The appellate court considered that a "key piece of evidence," with respect to what the appellate majority saw as an intent to deceive the bankruptcy court. *Id.* Finally, the majority found no injustice in applying judicial estoppel here. Observing, in "virtually all cases in which judicial estoppel is applied, the result will seem harsh to the party against whom the doctrine is invoked," the appellate majority reiterated that the purpose of judicial estoppel, *i.e.*, to protect the integrity of the court in question, and prevent manipulation of the judicial system, and found the doctrine's "laudable purpose is served" in this case. *Id.* ¶ 45.

¶ 27    The majority concluded that plaintiffs knowingly took inconsistent positions in the bankruptcy court and the circuit court regarding the existence of their personal injury claims, and they did so in a way that benefited them. Thus, the appellate majority found no abuse of discretion insofar as it determined the trial court's decision "was anything but arbitrary, fanciful, or unreasonable" (*id.* ¶¶ 46-47)—the applicable standard for abuse of discretion where a circuit court has exercised discretion in the first instance.

¶ 28    The dissenting justice, for her part, first noted the equitable nature of judicial estoppel, observing that it is meant to be " 'flexible and not reducible to a pat formula,' " that it should be invoked only to prevent an injustice (*id.* ¶ 52 (Schostok, J., dissenting) (quoting *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 850-51 (1994))), and that it is intended to prevent a litigant from "playing 'fast and loose' " with the court by "intentionally taking contrary positions in order to obtain an unfair advantage." (Internal quotation marks omitted.) *Id.* ¶ 52 (citing *Holland v. Schwan's Home Service, Inc.*, 2013 IL App (5th) 110560, ¶ 113). Though the majority had determined that the Fifth District's opinion in *Holland* was distinguishable, the dissent found it instructive.

¶ 29    The dissent observed that the facts of *Holland* were similar to those in this case. In *Holland*, the plaintiff, Holland, had filed a chapter 13 bankruptcy petition in August 2008 and the repayment plan was confirmed in November 2008. Six months later, in May 2009, Holland was terminated from his employment and a claim arose against the defendant-employer, Schwan's, for retaliatory discharge. Holland never declared his claim against Schwan's as an asset of his bankruptcy estate and Schwan's argued that Holland should be estopped from asserting his claim. *Holland*, 2013 IL App (5th) 110560, ¶ 115.

¶ 30    The *Holland* court disagreed, noting that judicial estoppel did not apply because Holland's failure to declare his claim against Schwan's as an asset of his bankruptcy estate did not constitute an inconsistent position under oath. *Id.* ¶ 118. Although the *Holland* court held that an inconsistent statement "under oath" was still a requirement for application of judicial estoppel (*id.* ¶ 119), the court noted that the absence of the oath requirement would not change its determination, because there was no evidence that Holland intended to omit his claim against Schwan's from the bankruptcy estate. *Id.* ¶ 120. In short, there was no intent to deceive.

¶ 31    Though the dissenting justice in this case argued for the preservation of an "under oath" requirement in this context, noting, *inter alia*, that *Runge* itself cites *People v. Caballero*, 206 Ill. 2d 65, 80 (2002), wherein "the sanctity of the oath" (internal quotation marks omitted) is mentioned, the dissenter would have found, "regardless of the oath requirement judicial estoppel should not have been applied here, because there was no evidence that the plaintiffs intended to omit this cause of action from the bankruptcy estate. Rather, the evidence in this case indicates that the failure to disclose was unintentional." 2014 IL App (2d) 140100, ¶ 59 (Schostok, J., dissenting).

¶ 32    The dissent observed that the majority, in its analysis, limited the inferential impact upon the plaintiffs of Myer's admonition regarding the need to disclose lump sum amounts received over $2,000 during the pendency of the bankruptcy proceeding, when "it could equally have been inferred by the plaintiffs [under the principle we refer to as *expressio unius est exclusion alterius* (the expression of one thing is the exclusion of another)] that it was not necessary to disclose any unliquidated assets." *Id.* The dissent also pointed out that there were no bankruptcy pleadings required to be filed after the cause of action arose. *Id.*

¶ 33    Moreover, the dissent took issue with the majority's determination that the fact the plaintiffs disclosed their first workers' compensation case evinced knowledge of the need to disclose the pendency of the present suit. The dissenter observed that reduced income in the former instance necessitated a return to bankruptcy court; whereas, plaintiffs had received nothing—they might as laymen consider reportable—as a result of the personal injury action during the pendency of the bankruptcy proceeding. *Id.* ¶ 60. The dissent also made the following observations:

> "[T]he trustee *** did not believe that disclosure of this suit would have changed the outcome of the bankruptcy proceeding since no funds were received during the five years when payments were required. *** Attached to the defendants' motion for summary judgment were letters from plaintiffs' counsel seeking to settle this cause of action prior to the discharge of the bankruptcy proceeding. If the plaintiffs were trying to avoid creditors, they would have waited until after the discharge in bankruptcy to attempt to settle this suit." *Id.* ¶ 61.

¶ 34    The dissent concluded that the majority—by automatically finding that plaintiffs' failure to disclose the suit evinced the intent to deceive—had applied "a rigid formula [that] fails to consider the specific circumstances of each case." *Id.* ¶ 62. The dissent found the decisions in *Dailey*, *Berge*, and *Shoup* distinguishable from the present case because, *inter alia*, they all involved subsequent bankruptcy filings made where disclosure was specifically required and the plaintiff failed to make the required disclosure. *Id.* (citing *Shoup v. Gore*, 2014 IL App (4th) 130911, ¶ 10, *Berge v. Mader*, 2011 IL App (1st) 103778, ¶ 17, and *Dailey v. Smith*, 292 Ill. App. 3d 22, 28 (1997)).

¶ 35                                    ANALYSIS

¶ 36    Judicial estoppel is an equitable doctrine invoked by the court at its discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *People v. Runge*, 234 Ill. 2d 68, 132 (2009); *People v. Jones*, 223 Ill. 2d 569, 598 (2006); *People v. Caballero*, 206 Ill. 2d 65, 80 (2002). As the Supreme Court has observed, the uniformly recognized purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from "deliberately changing positions" according to the exigencies of the moment. (Internal quotation marks omitted.) *New Hampshire*, 532 U.S. at 749-50. Judicial estoppel applies in a judicial proceeding when litigants take a position, benefit from that position, and then seek to take a contrary position in a later proceeding. *Barack Ferrazzano Kirshbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453, 460 (2003).

¶ 37    This court has identified five prerequisites as "generally required" before a court may invoke the doctrine of judicial estoppel. The party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it. *Runge*, 234 Ill. 2d at 132; *Jones*, 223 Ill. 2d at 598; *Caballero*, 206 Ill. 2d at 80.

¶ 38    Notably, a statement "under oath" has not been listed among those requirements. Indeed, although this court in *Caballero* mentioned " 'the sanctity of the oath' " in its discussion of judicial estoppel (*Caballero*, 206 Ill. 2d at 80 (quoting *Bidani v. Lewis*, 285 Ill. App. 3d 545, 549 (1996))), the court did not subsequently list an oath requirement among the requisites for application of the doctrine (see *Barack Ferrazzano Kirshbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453, 464 (2003) (noting the absence of an oath requirement among the elements listed in *Caballero*)), and this court has not mentioned it since. See *Runge*, 234 Ill. 2d at 132; *Jones*, 223 Ill. 2d at 598. The core concern is, and it seems should be, that a party takes factually inconsistent positions, in separate proceedings, intending that the trier of fact accept the truth of the facts alleged. As the appellate majority in this case aptly observed, "there might well be situations in which a party could intend a court to accept the truth of its factual position even without a statement under oath." 2014 IL App (2d) 140100, ¶ 42; see also *Department of Transportation v. Coe*, 112 Ill. App. 3d 506, 510 (1983) (relaxing the oath requirement but holding that the record must "clearly reflect that the party intended the trier to accept the truth of the party's position"). We now expressly hold that a statement under oath is not required for the doctrine of judicial estoppel to apply. Application of the five factors enumerated in *Cabellero*, *Runge*, and *Jones* addresses, without undue restriction, the problem

- 10 -

of a party acting in bad faith, playing " 'fast and loose' " with the court. *Runge*, 234 Ill. 2d at 133.

¶ 39    We also agree with the appellate majority's statement that, "[j]udicial estoppel, like all estoppels, must be proved by clear and convincing evidence." 2014 IL App (2d) 140100, ¶ 25 (citing *Smeilis v. Lipkis*, 2012 IL App (1st) 103385, ¶ 20 (judicial estoppel), and *Boelkes v. Harlem Consolidated School District No. 122*, 363 Ill. App. 3d 551, 554 (2006) (collateral, equitable and judicial estoppel) (citing *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 314 (2001) (equitable estoppel))). We believe that evidentiary standard properly accounts for a degree of caution with which this doctrine should be considered and applied. See *Construction Systems, Inc. v. FagelHaber, LLC*, 2015 IL App (1st) 141700, ¶ 38 (noting that courts have warned the doctrine is "an extraordinary one which should be applied with caution (internal quotation marks omitted)").

¶ 40    We turn now to the appropriate standard of review. The parties dispute the applicable standard of review: the defendants arguing for abuse of discretion; the plaintiffs urging us to apply *de novo* review.

¶ 41    Since we have said that judicial estoppel is an equitable doctrine invoked by the court at its discretion (*Runge*, 234 Ill. 2d at 132; *Jones*, 223 Ill. 2d at 598; *Caballero*, 206 Ill. 2d at 80), it would seem to follow that we review a court's invocation of the doctrine under the abuse-of-discretion standard (see *Highmark Inc. v. Allcare Health Management System, Inc.*, 572 U.S. ___, ___, 134 S. Ct. 1744, 1748 (2014) (noting that, "[t]raditionally," decisions on matters of discretion are reviewable for abuse of discretion)), irrespective of the procedural mechanism that culminated in the court's ruling. An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *Holland*, 2013 IL App (5th) 110560, ¶ 114.

¶ 42    On the other hand, defendants raised this issue via a motion for summary judgment, seeking dismissal pursuant to the doctrine.[4] An appeal following a grant of summary judgment, like an appeal from a section 2-619 dismissal, is subject to *de novo* review. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 254 (2004). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 25. Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007). Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. *Pielet v. Pielet*, 2012 IL 112064, ¶ 53. On a motion for summary judgment, the trial court has a duty to construe the record strictly against the movant

---

[4]We note that one appellate panel addressing judicial estoppel in this context, and the appropriate standard of review, has observed that, though raised in a motion for summary judgment, a motion seeking dismissal essentially raises an affirmative matter that seeks to defeat the claim, and is more appropriate for a motion to dismiss under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2008)). *Berge v. Mader*, 2011 IL App (1st) 103778, ¶ 9. Some federal courts take a similar view. See *Barley v. Fox Chase Cancer Center*, 54 F. Supp. 3d 396, 404 (E.D. Pa. 2014) ("Judicial estoppel is properly classified as an affirmative defense, *see* Fed.R.Civ.P. 8(c)(1); *see also* 18B Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 4477 (2d ed.2014), and, like all affirmative defenses, it is the defendant's burden to properly plead and prove.").

and liberally in favor of the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). As a result, summary judgment is not appropriate: (1) if "there is a dispute as to a material fact" (*Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424 (1998)); (2) if "reasonable persons could draw divergent inferences from the undisputed material facts" (*id.*); or (3) if "reasonable persons could differ on the weight to be given the relevant factors" of a legal standard (*Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 269 (2007)).

¶ 43    Where the prospect of judicial estoppel is raised via a motion for summary judgment, Illinois appellate decisions are in conflict over the applicable standard of review. As the appellate court noted in this case, some courts have applied an abuse-of-discretion standard (*Berge*, 2011 IL App (1st) 103778, ¶ 9; *Bidani*, 285 Ill. App. 3d at 550), while others have ultimately applied a *de novo* standard to dismissal, reasoning that the underlying motion, for summary judgment or under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)), is "inseparable" from the decision to apply judicial estoppel (*Smeilis*, 2012 IL App (1st) 103385, ¶¶ 22-23 (citing *Barack*, 342 Ill. App. 3d at 459 (stating that the court applied an abuse-of-discretion standard to application of judicial estoppel, but applied *de novo* review to the grant of summary judgment)). 2014 IL App (2d) 140100, ¶ 19. Divergent opinions as to the appropriate standard of review are not limited to Illinois jurisprudence.

¶ 44    We note that federal courts are split as to whether dismissal on grounds of judicial estoppel should be reviewed *de novo* or for abuse of discretion when a ruling was rendered on a motion for summary judgment—which is normally subject to *de novo* review—though the clear majority favor the abuse-of-discretion standard. See *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 142 (2d Cir. 2005) (applying *de novo* standard of review); *Solomon v. Vilsack*, 628 F.3d 555, 561 (D.C. Cir. 2010) (same); *Mirando v. United States Department of Treasury*, 766 F.3d 540, 545 (6th Cir. 2014) (same); *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1086-87 (10th Cir. 2013) (reviewing for abuse of discretion); *Ah Quin v. County of Kauai Department of Transportation*, 733 F.3d 267, 270-71 (9th Cir. 2013) (same); *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013) (same); *Rockwood v. SKF USA Inc.*, 687 F.3d 1, 10 (1st Cir. 2012) (same); *In re Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012) (same); *Capella University, Inc. v. Executive Risk Specialty Insurance Co.*, 617 F.3d 1040, 1051 (8th Cir. 2010) (same); *In re Kane*, 628 F.3d 631, 636 (3d Cir. 2010) (same); *Stephens v. Tolbert*, 471 F.3d 1173, 1175 (11th Cir. 2006) (same).

¶ 45    Although we have not conducted comprehensive research on the subject, we note that some other jurisdictions have opted for *de novo* review. See *Tarver v. City of Sheridan Board of Adjustments*, 2014 WY 71, ¶ 10, 327 P.3d 76 (Wyo. 2014) (application of the principles of judicial estoppel, collateral estoppel and/or the law of the case are matters of law; consequently, review is *de novo*); *NOLM, LLC v. County of Clark*, 100 P.3d 658, 663 (Nev. 2004) ("Whether judicial estoppel applies is a question of law subject to *de novo* review."); *State v. Petty*, 548 N.W.2d 817, 820 (Wis. 1996) ("Determining the elements and considerations involved before invoking the doctrine of judicial estoppel are questions of law which we decide independently [of the circuit court or court of appeals]."); *Spohn v. Van Dyke Public Schools*, 822 N.W.2d 239, 246 (Mich. Ct. App. 2012) (Michigan court of appeals noted that judicial estoppel is an equitable doctrine and, when reviewing equitable actions, that court reviews the trial court's decision *de novo*); *Atkins v. 4940 Wisconsin, LLC*, 93 A.3d 1286, 1289 (D.C. 2014) (*de novo* review); compare *Regents of the University of California v. Superior Court*, 166 Cal. Rptr. 3d 166, 186 (Cal. Ct. App. 2014) ("The determination of whether judicial

estoppel can apply to the facts is a question of law reviewed de novo, i.e., independently [citations], but the findings of fact upon which the application of judicial estoppel is based are reviewed under the substantial evidence standard of review. [Citations.] Even if the necessary elements of judicial estoppel are found, because judicial estoppel is an equitable doctrine [citations], whether it should be applied is a matter within the discretion of the trial court. [Citations.] The exercise of discretion for an equitable determination is reviewed under an abuse of discretion standard." (Internal quotation marks omitted.)).

¶ 46    The appellate court in this case stated the standard of review thusly:

"In the context of this appeal, both standards apply. In applying the summary-judgment standard, we must decide first whether there were any issues of material fact related to the applicability of judicial estoppel. If there were, then summary judgment would be improper. If not, then we must decide whether defendants were entitled to judgment as a matter of law. To answer that latter question, we necessarily must decide whether the court abused its discretion in applying judicial estoppel under the undisputed facts. If it did, then defendants would not be entitled to judgment as a matter of law. If it did not, then they would be." 2014 IL App (2d) 140100, ¶ 22.

¶ 47    We believe the procedural and analytical sequence should proceed as follows.[5] First, the trial court must determine whether the prerequisites for application of judicial estoppel are met. In this respect, the party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it. *Runge*, 234 Ill. 2d at 132; *Jones*, 223 Ill. 2d at 598; *Caballero*, 206 Ill. 2d at 80. We note, even if all factors are found, intent to deceive or mislead is not necessarily present, as inadvertence or mistake may account for positions taken and facts asserted. Second, if all prerequisites have been established, the trial court must determine whether to apply judicial estoppel—an action requiring the exercise of discretion. Multiple factors may inform the court's decision, among them the significance or impact of the party's action in the first proceeding and, as noted, whether there was an intent to deceive or mislead, as opposed to the prior position having been the result of inadvertence or mistake. *New Hampshire*, 532 U.S. at 753 (acknowledging that it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake); accord *Holland*, 2013 IL App (5th) 110560, ¶ 120 (" 'The Courts have been reluctant

---

[5]As will appear hereafter, in this case we would not need to engage in the full analysis we outline, *i.e.*, review of the ruling on summary judgment, and could perhaps decline to settle the matter of standards of review in that respect (see *The Venture—Newberg-Perini, Stone & Webster v. Illinois Workers' Compensation Comm'n*, 2013 IL 115728, ¶ 14 (refraining from deciding the applicable standard of review as the result would be the same under either standard); *People v. Edwards*, 2012 IL 111711, ¶ 30 (same); see also *Hoffler v. Bezio*, 726 F.3d 144, 151-52 (2d Cir. 2013) (stating that a court need not determine standard of review when the result would be the same under either standard)), we nonetheless address the issue in order to provide guidance in future cases; however, we provide the discussion here to guide future courts confronted with this question. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 236 (2010) ("judicial *dictum* is entitled to much weight, and should be followed unless found to be erroneous" (internal quotation marks omitted)).

to apply the doctrine of judicial estoppel in the bankruptcy context where the nondisclosure of a claim was inadvertent.' " (quoting *Jaeger v. Clear Wing Productions, Inc.*, 465 F. Supp. 2d 879, 882 (S.D. Ill. 2006)); see also *Jaeger*, 465 F. Supp. 2d at 882 (suggesting—in what may, perhaps, be a minority view in federal bankruptcy jurisprudence—that judicial estoppel should apply only where there is "deliberate," "cold manipulation," or a "scheme to mislead the court," not where there is "inadvertent oversight," a "confused blunder," or a "good-faith mistake").

¶ 48    With respect to the applicable standard of review, we believe it logically follows that we review a trial court's exercise of discretion for abuse of discretion. That standard also appears to be consistent with the approach commonly taken by other courts where an exercise of discretion is concerned. *Highmark Inc.*, 572 U.S. at ___, 134 S. Ct. at 1748 ("[t]raditionally," decisions on matters of discretion are reviewable for abuse of discretion). Therefore, where a trial court has exercised its discretion in the application of judicial estoppel, we review for abuse of discretion.

¶ 49    However, where the exercise of that discretion results in the termination of the litigation, and that result is brought about via the procedural mechanism of a motion for summary judgment, it follows, as well, that we review that ruling *de novo*. As the authorities previously cited indicate, the necessary representations in a successful motion for summary judgment are that: there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law (*Nationwide Financial, LP*, 2014 IL 116717, ¶ 25), as reasonable persons could not draw divergent inferences from the undisputed facts (*Pielet*, 2012 IL 112064, ¶ 53), and the movant's right to judgment is clear and free from doubt (*Bagent*, 224 Ill. 2d at 163). The record must be strictly construed against the movant and liberally in favor of the nonmoving party. *Williams*, 228 Ill. 2d at 417. There can be no room for reasonable persons to "differ on the weight to be given the relevant factors" of a legal standard. *Calles*, 224 Ill. 2d at 269.

¶ 50    In this case, our review is necessarily truncated by circumstances. When a court is required by law to exercise its discretion, the failure to do so may itself constitute an abuse of discretion, precluding deferential consideration on appeal. *People v. Newborn*, 379 Ill. App. 3d 240, 248 (2008); *People v. Whirl*, 351 Ill. App. 3d 464, 467 (2004); see also *Arizona v. Washington*, 434 U.S. 497, 510 n.28 (1978) ("If the record reveals that the trial judge has failed to exercise the 'sound discretion' entrusted to him, the reason for such deference by an appellate court disappears."). We find that principle applicable in this case. Although the circuit court, at the outset in its written order, recited the proposition that judicial estoppel "is an equitable doctrine invoked by the court at its discretion," it does not otherwise appear from this record—as we will elaborate hereafter—that the court exercised discretion in its application of the doctrine, finding, rather, that the presence of certain facts, *i.e.*, the mere failure to disclose the personal injury cause of action in the bankruptcy proceeding, *mandated* dismissal.[6] Because no

---

[6]The circuit court's inaccurate references to the content of the Seymours' February 2010 motion to modify the bankruptcy plan, as indicative of their knowledge of the need to disclose, and their intent, does not convince us otherwise. In any event, the Supreme Court's recent statement in *Highmark Inc.* would seem applicable here: "The abuse-of-discretion standard does not preclude an appellate court's correction of a district court's legal or factual error: 'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of

discretion was exercised—or if arguably exercised, clearly abused by reason of erroneous assessment of the evidence—no deferential review would be warranted in any event. We find hereafter, pursuant to independent consideration, judicial estoppel was inequitably applied.

¶ 51     We note, at the outset, there are some relevant bankruptcy questions upon which the federal courts are not in agreement. Because we find the dispositive issue in this case to be whether the plaintiffs "deliberately" changed positions according to the exigencies of the moment, whether they used "intentional self-contradiction *** as a means of obtaining unfair advantage" (internal quotation marks omitted) (*New Hampshire*, 532 U.S. at 750-51), we deem it unnecessary to weigh in on those federal questions.

¶ 52     Though trustee Myer's affidavit suggests otherwise, and *the statute and rule* she cited (11 U.S.C. § 541 (2006) and Bankruptcy Rule 1007(h) (Fed. R. Bankr. P. 1007(h))) may well support her position,[7] we will assume, for purposes of our analysis, that the Seymours were under a continuing duty to disclose their personal injury cause of action during the pendency of their chapter 13 bankruptcy proceeding. There appears to be general agreement with the position taken by the Eleventh Circuit Court of Appeals in *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010):

> "A debtor seeking shelter under the bankruptcy laws has a statutory duty to disclose all assets, or potential assets to the bankruptcy court. 11 U.S.C. §§ 521(1), 541(a)(7). 'The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather the debtor must amend [her] financial statements if circumstances change.' *Burnes*, 291 F.3d at 1286. This duty applies to proceedings under Chapter 13 and Chapter 7 alike because 'any distinction between the types of bankruptcies available is not sufficient enough to affect the applicability of judicial estoppel because the need for complete and honest disclosure exists in all types of bankruptcies.' *De Leon v. Comcar Industries, Inc.*, 321 F.3d 1289, 1291 (11th Cir.2003)."

Accord *In re Flugence*, 738 F.3d 126, 128-31 (5th Cir. 2013).[8] Specifically, it has been said that federal courts have uniformly held that chapter 13 debtors are obligated to disclose

---

the evidence.' *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)." *Highmark Inc.*, 572 U.S. at ___ n.2, 134 S. Ct. at 1748 n.2.

[7]See *In re Padula*, No. 11-12985-BFK, 2015 WL 1931977, at *4 n.6 (E.D. Va. Apr. 28, 2015): "Fed. R. Bankr. P. 1007(h). The Rule is limited by its terms to the kinds of property described in Bankruptcy Code Section 541(a)(5). It does not apply to post-petition property covered by Section 1306, that is, to the kind of property at issue in *Carroll v. Logan* and in this case. *In re Kemp*, Adversary No. 11–5002, 2011 WL 3664497, at *3 (W.D.La. Aug. 19, 2011) (Rule 1007(h) 'does not, however, cover the property brought into the estate under section 1306, including post-petition causes of action. Nevertheless, courts have uniformly held that a Chapter 13 debtor is obligated to disclose post-petition causes of action.')."

[8]We note, for purposes of applying judicial estoppel, *federal authority* holds that a debtor's failure to disclose an asset is *generally* deemed inadvertent *only* when the debtor *either* lacks knowledge of the undisclosed claims or has no motive for their concealment (*Eastman v. Union Pacific R.R. Co.*, 493 F.3d 1151, 1157 (10th Cir. 2007) ("courts routinely, albeit at times *sub silentio*, infer deliberate manipulation")), neither of which—lack of knowledge or motive—is often the case. See also *Flugence*, 738 F.3d at 130-31 (the controlling inquiry with respect to inadvertence is whether the debtor knew of

- 15 -

postpetition causes of action. *In re Padula*, No. 11-12985-BFK, 2015 WL 1931977 (E.D. Va. Apr. 28, 2015).[9]

¶ 53    So we begin with the assumption that the Seymours were under a legal duty to disclose their personal injury cause of action as an asset in the bankruptcy proceeding and the undisputed fact that they failed to do so. We assume further, for purposes of this analysis, that the prerequisites generally required for the application of judicial estoppel are established, *i.e.*, that the parties to be estopped have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it. *Runge*, 234 Ill. 2d at 132; *Jones*, 223 Ill. 2d at 598; *Caballero*, 206 Ill. 2d at 80.

¶ 54    We may well say that the Seymours intended for the bankruptcy court to accept the truth of the fact, or their position, that they had no "assets"—as they understood the term—other than those disclosed; however, there is no evidence that they intended to deceive or mislead the court—a critical factor in the application of judicial estoppel. The one factor cited by the circuit court as evincing the Seymours' knowledge of the need to disclose their personal injury claim, *i.e.*, that they had recognized the need to disclose Terry's workers' compensation claim as an asset in their 2010 motion to modify the bankruptcy plan, simply does not exist.

¶ 55    The inference that plaintiffs knew they had to disclose the June 3, 2010, injuries and derivative claims because they had disclosed similar "assets" or sought "exemptions" previously in their motion to modify the bankruptcy plan, finds no basis in the bankruptcy court's records or the affidavits before the circuit court. We quote here the pertinent allegations and representations of the motion to modify the chapter 13 plan filed in the bankruptcy court on February 25, 2010:

> "That the Debtor, TERRY L. SEYMOUR, was injured at work and has been unable to work and receiving only workmen's compensation benefits since May, 2009. He anticipates being released to work within the next few weeks.
>
> That the Debtors' combined gross income during 2009 was approximately $8800.00 less than their gross income at the time of the filing of their petition. Because of reduced income, the Debtors have fallen behind in payment of their monthly living expenses.

the facts giving rise to her claim and had a motive to conceal; "[A] lack of awareness of a statutory disclosure duty for [ ] legal claims is not relevant." (Internal quotation marks omitted.)).

[9]While our primary focus here is on the knowledge and intent of the debtors, we consider the value of the personal injury claim to the creditors a relevant consideration under the circumstances of this case. One might well ask what a postpetition, postconfirmation, unliquidated cause of action is worth to debtors' creditors in a chapter 13 bankruptcy, which is, as trustee Myer attested, to be completed within a five-year period. See 11 U.S.C. § 1322(d)(1) (2006). Surprisingly, though many decisions speak to the need for disclosure, far fewer address valuation of the claim, which is the only issue that should be of practical interest to the debtors' creditors. Those that do—usually in the context of claimed exemptions—concede that a cause of action is an asset that is not easily valued, insofar as, prior to judgment, a cause of action's value is unliquidated and contingent. *Wissman v. Pittsburgh National Bank*, 942 F.2d 867, 871 (4th Cir. 1991) (adding that "claiming a specific dollar exemption" for a cause of action "is, at best, speculation"); accord *In re Ball*, 201 B.R. 210, 214 (Bankr. N.D. Ill. 1996).

The Debtors received tax refunds for the year 2009 in the amount of approximately $7805.00. They need said refunds to supplement their living expenses.

That if their Chapter 13 Plan were modified as hereinafter provided, the Debtors believe they would be able to make future payments to the Trustee and complete their Chapter 13 Plan within the time allowed by law."

The Debtors thereafter prayed only that they be allowed to retain the entirety of their 2009 income tax refunds—an amount in excess of $2000—"to supplement their living expenses" and that "all other provisions of their Chapter 13 Plan remain in full force and effect."

¶ 56 The order that was entered on March 19, 2010, modifying the plan, provided only:

"That the Chapter 13 Plan of the Debtors is hereby modified to provide that the Debtors are hereby allowed to retain all of their 2009 income tax refunds to supplement their living expenses.

That all other provisions of the Debtors' Chapter 13 Plan shall remain in full force and effect."

¶ 57 The workers' compensation benefit was not asserted as an asset; it was, as the dissenting appellate justice observed in this case (2014 IL App (2d) 140100, ¶ 60 (Schostok, J., dissenting)), referenced only as a cause of reduced income. Obviously, there was no claim of an exemption.

¶ 58 Moreover, the circuit court was not justified in extrapolating its inference from Myer's affidavit. As we have noted, Myer indicated that Terry Seymour had filed a motion to modify, stating that he had been injured at his job and was unable to work. As a consequence, he had been receiving only workers' compensation benefits since May of 2009. In a separately numbered paragraph, *without correlative reference*, Myer stated that workers' compensation proceeds, "pursuant to Illinois Compiled Statutes, are specifically exempt from bankruptcy." She never said that the Seymours claimed the workers' compensation proceeds as an exemption, nor did any other affidavits filed on behalf of the plaintiffs. The filing of the motion to modify does not evince knowledge, on the part of the plaintiffs, of the need to disclose their personal injury claim in the bankruptcy proceeding. As the dissenting appellate court justice in this case aptly observed, the 2009 injury and workers' compensation claim were relevant, and submitted, in the motion to modify only because they explained the Seymours' decrease in income. *Id.*

¶ 59 Moreover, as the dissenter noted, citing letters the Seymours' personal injury counsel sent to defendants seeking to settle the case during the pendency of the bankruptcy case, "If the plaintiffs were trying to avoid creditors, they would have waited until after the discharge in bankruptcy to attempt to settle this suit." *Id.* ¶ 61.

¶ 60 It is also clear from Myer's affidavit that, had she been apprised of the personal injury claim, she, at least, would not have taken action with respect thereto. It is, as we have suggested, and federal case law indicates (see *Wissman*, 942 F.2d at 871), difficult to discern how this asset might have been valued so as to benefit the Seymours' creditors within the applicable period of chapter 13 bankruptcy.

¶ 61 Further, the uncontroverted affidavits of the Seymours and their bankruptcy attorney confirm that Myer advised them that they had to report any lump sum funds received in excess of $2,000 during the pendency of the bankruptcy. It is understandable that laymen might infer, in the absence of advice to the contrary from their bankruptcy attorney—which appears not to

have been forthcoming in this case—that smaller sums—and certainly unliquidated claims for money—did not have to be disclosed.

¶ 62     We are not willing, as appears to be the case in prevailing federal authority given these circumstances (see *Eastman*, 493 F.3d at 1157; *Flugence*, 738 F.3d at 130-31), to *presume* that the debtors' failure to disclose was deliberate manipulation. We do not find that inference or presumption controlling in Illinois, much less given the facts of this case.

¶ 63     Where there is affirmative, uncontroverted evidence, that debtors did not deliberately change positions according to the exigencies of the moment, that they did not employ "intentional self-contradiction *** as a means of obtaining unfair advantage," we believe the purpose of the doctrine of judicial estoppel is not furthered by application of the doctrine in this case. We are not so ready, as the federal courts appear to be, to penalize, via presumption, the truly inadvertent omissions of good-faith debtors in order to protect the dubious, practical interests of bankruptcy creditors. Compare *Flugence*, 738 F.3d at 130-31 ("the controlling inquiry, with respect to inadvertence, is the knowing of facts giving rise to inconsistent positions"; a "lack of awareness of a statutory disclosure duty for [ ] legal claims is not relevant"; expressing concern that a different rule would "land another blow on the victims of bankruptcy fraud" (internal quotation marks omitted)); *Payne v. Wyeth Pharmaceuticals, Inc.*, 606 F. Supp. 2d 613, 616 (E.D. Va. 2008) (federal authority holds that a debtor's failure to disclose an asset is deemed inadvertent *only* when the debtor *either* lacks knowledge of the undisclosed claims or has no motive for their concealment). In this case, given these uncontested facts, we find the failure to disclose the personal injury action insufficient, in itself, to warrant the application of judicial estoppel.

¶ 64     In sum, we agree with the dissent's summary in this matter. The fact that the plaintiffs had a legal duty to disclose this suit, and failed to do so, does not, given the facts of this case, establish the intent to deceive and/or manipulate the bankruptcy court. "[T]his reasoning diminishes the application of judicial estoppel to a rigid formula and fails to consider the specific circumstances of each case." 2014 IL App (2d) 140100, ¶ 62 (Schostok, J., dissenting). Moreover, the filing of the Seymours' 2010 motion to modify the bankruptcy plan does not evince their awareness of the need to disclose this personal injury cause of action. Any inference otherwise is based on a wholesale misconstruction of the motion to modify and the pertinent affidavits submitted in this case. We find that the application of judicial estoppel was not warranted here. We, therefore, reverse the judgments of the circuit and appellate courts, and remand for further proceedings.

¶ 65     Reversed and remanded.

- 18 -