2025 IL App (4th) 250147

NO. 4-25-0147

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 19, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| BLESSING HOSPITAL, | ) | Appeal from the |
|      Plaintiff-Appellant, | ) | Circuit Court of |
|      v. | ) | Sangamon County |
| | ) | No. 22MR238 |
| THE ILLINOIS HEALTH FACILITIES AND | ) | |
| SERVICES REVIEW BOARD; DEBRA SAVAGE, in | ) | Honorable |
| Her Capacity as Chair of the Illinois Health Facilities and | ) | Adam Giganti, |
| Services Review Board; KENNETH BURNETT, in His | ) | Judge Presiding. |
| Capacity as a Member of the Illinois Health Facilities and | ) | |
| Services Review Board; DAVID FOX, in His Capacity as | ) | |
| a Member of the Illinois Health Facilities and Services | ) | |
| Review Board; STACY GRUNDY, in Her Capacity as a | ) | |
| Member of the Illinois Health Facilities and Services | ) | |
| Review Board; ANTOINETTE HARDY-WALLER, in | ) | |
| Her Capacity as a Member of the Illinois Health Facilities | ) | |
| and Services Review Board; GARY KAATZ, in His | ) | |
| Capacity as a Member of the Illinois Health Facilities and | ) | |
| Services Review Board; MONICA LeGRAND, in Her | ) | |
| Capacity as a Member of the Illinois Health Facilities and | ) | |
| Services Review Board; SANDRA MARTELL, in Her | ) | |
| Capacity as a Member of the Illinois Health Facilities and | ) | |
| Services Review Board; LINDA RAE MURRAY, in Her | ) | |
| Capacity as a Member of the Illinois Health Facilities and | ) | |
| Services Review Board; THE DEPARTMENT OF | ) | |
| PUBLIC HEALTH; AMAAL TOKARS, M.D., in Her | ) | |
| Capacity as Interim Director of Public Health; QUINCY | ) | |
| PHYSICIANS AND SURGEONS CLINIC, S.C., d/b/a | ) | |
| Quincy Medical Group; QUINCY PHYSICIANS AND | ) | |
| SURGEONS CLINIC, PLLC, d/b/a Quincy Medical | ) | |
| Group; and QUINCY MEDICAL GROUP HOSPITAL, | ) | |
| INC., | ) | |
| | ) | |
|      Defendants | ) | |

(Quincy Physicians And Surgeons Clinic, S.C., d/b/a
Quincy Medical Group; Quincy Physicians and Surgeons
Clinic, PLLC, d/b/a Quincy Medical Group; and Quincy
Medical Group Hospital, Inc.,
          Defendants-Appellees).

)
)
)
)
)
)
)

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Presiding Justice Harris and Justice Vancil concurred in the judgment and opinion.

## OPINION

¶ 1      Plaintiff Blessing Hospital appeals from the circuit court's January 15, 2025, order dismissing its complaint for administrative review because proper summonses were not issued within 35 days of service of the May 4, 2022, administrative decision as required by section 3-103 of the Administrative Review Law (Review Law) (735 ILCS 5/3-103 (West 2024)). On appeal, plaintiff argues that the court erred in denying its motion to strike the renewed motion to dismiss, finding the summonses were deficient, and dismissing the complaint for administrative review.

¶ 2      For the reasons set forth below, we reverse and remand.

¶ 3                I. BACKGROUND

¶ 4      This is the second appeal in this case, the first resulting in our opinion in *Blessing Hospital v. Illinois Health Facilities & Service Review Board*, 2024 IL App (4th) 230282 (*Blessing I*). We therefore draw from relevant portions of that opinion as background for this appeal where appropriate.

¶ 5      On April 26, 2022, the Illinois Health Facilities and Services Review Board (Board) approved an application for a certificate of need submitted by Quincy Medical Group Hospital (QMG Hospital) and Quincy Physicians & Surgeons, S.C., doing business as Quincy Medical Group (collectively QMG), to establish a 28-bed hospital in Quincy, Illinois. The Board issued a

permit letter on May 4, 2022, addressed to Patricia Williamson, QMG's registered agent, vice president, and chief financial officer. Although the May 4 permit letter stated it was "Transmitted Electronically," it did not contain an e-mail address, a facsimile number, or proof of service.

¶ 6                                  A. Administrative Review Complaint

¶ 7                On May 31, 2022, plaintiff filed complaint pursuant to the Review Law (735 ILCS 5/3-103 (West 2022)) in the circuit court of Sangamon County seeking administrative review of the Board's approval of QMG's application. There is no dispute about the timeliness of the complaint's filing. The first summonses, however, were not issued until June 15. We also note that no affidavit was filed with the complaint designating the last known address of each defendant upon whom service was to be made as required by section 3-105. *Id.* § 3-105.

¶ 8                                  B. Parties to the Administrative Review

¶ 9                The defendants in the administrative review action can be broken into two distinct groups. The first group is comprised of the QMG defendants. The second group is comprised of the State defendants: the Board; Debra Savage, in her capacity as chair of the Board; Board members Kenneth Burnett, David Fox, Stacy Grundy, Antoinette Hardy-Waller, Gary Kaatz, Monical Legrand, Sandra Martell, and Linda Rae Murray; the Department of Public Health (IDPH); and Amaal Tokars, interim director of public health (collectively referred to as the State). Only the QMG defendants have participated in this appeal.

¶ 10                Plaintiff issued its original summonses on June 15, 2022. The summonses provided that the recipient "must file Appearance and Answer/Response forms with the court within 30 days" after service. All defendants entered their appearances within 30 days, the State defendants on July 13, 2022, and the QMG defendants two days later. As shown below, the QMG defendants

filed their motion to dismiss on July 15, 2022, and the State defendants filed their motion to dismiss on July 28.

¶ 11          C. Proceedings on Defendants' Initial Motion to Dismiss in 2022

¶ 12          Defendants each moved to dismiss plaintiff's administrative review complaint pursuant to section 2-619(a)(5), (9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5), (9) (West 2024)), arguing that the summonses were not issued within the required 35-day period specified in section 3-103 of the Review Law (735 ILCS 5/3-103 (West 2024)). According to defendants, the 35-day period commenced with the "issuance" of the May 4 permit letter to Quincy Medical Hospital, meaning that the period expired on June 8. Neither motion indicated how or when the May 4 decision was served. The circuit court granted defendants' motion to dismiss, with prejudice, on the basis that plaintiff failed to cause summons to timely issue. The court ruled that the 35-day statutory period under section 3-103 commenced on May 4, the day the administrative decision was issued. It made no finding as to defendants' other arguments in their motions, namely that various entities and individuals should be dismissed as unnecessary parties to the litigation or that plaintiff's summonses were defective.

¶ 13          Plaintiff moved to reconsider the dismissal order, arguing, *inter alia*, that (1) no evidence existed in the record showing that the Board served QMG in compliance with Illinois law and (2) the circuit court improperly interpreted the 35-day period provided for under section 3-103. The court denied the motion to reconsider, and plaintiff appealed.

¶ 14          In both orders, the court found that the good-faith exception, which might have excused plaintiff's tardiness, did not apply.

¶ 15                         D. First Appeal—*Blessing I*

¶ 16          In *Blessing I*, this court was presented with two questions on appeal: (1) when does

- 4 -

the 35-day period under section 3-103 (735 ILCS 5/3-103 (West 2022)) commence and (2) alternatively, if the filing period commenced on May 4, 2022, whether summonses issued on June 15 precluded the circuit court from considering the merits of plaintiff's complaint for administrative review. The *Blessing I* court made several findings, but relevant here are the following: (1) Under section 3-103, "every action to review a final administrative decision shall be commenced by the filing of an administrative complaint and issuance of summons within 35 days of the date a copy of the final administrative decision was served on the party affected by the decision" (*Blessing I*, 2024 IL App (4th) 230282, ¶ 30); (2) "Because no other service provisions have been identified, the method of service set forth in section 1130.1170(b) [of Title 77 of the Illinois Administrative Code (77 Ill. Adm. Code 1130.1170(b) (2013))] controls; thus, service is to occur by personal service or by certified mail, and when service is via certified mail, the date of service is the date of mailing" (*id.* ¶ 39); and (3) "on the facts of this case, defendants failed to carry their burden to establish that the summonses were not timely issued in the circuit court" (*id.* ¶ 51). As we explained in *Blessing I*, a section 2-619 motion must be supported by affidavit if its grounds do not appear on the face of the pleading attacked. *Id.* ¶ 43 (citing 735 ILCS 5/2-619(a) (West 2022)). "[T]he administrative review complaint stated only that the Board's decision was issued on May 4, 2022; it did not state when the Board's decision was served. Thus, under section 2-619(a), it was incumbent upon defendants to establish the grounds supporting their respective motions, *i.e.*, the date of service on QMG." (Emphases omitted.) *Id.*

¶ 17        In *Blessing I*, we reversed and remanded with instructions for the circuit court to address the other issues raised in defendants' motions to dismiss, including issues of irregularities in the summonses, "on their merits before proceeding forward with the administrative review." *Id.* ¶ 63.

¶ 18        It is essential to understand the precise nature of our ruling in *Blessing I*. We held that defendants' motions under 2-619 were based on a factual premise that was unsupported in the record. Specifically, while the record showed that the Board had *issued* its permit letter on May 4, 2022, it did not establish the specific date on which the letter was *served* on the parties affected by the administrative decision pursuant to section 3-103 of the Review Law. Because service of the letter started the relevant 35-day period in which plaintiff was required to have summonses issued, and because defendants could not establish when that period began to run, they could not succeed on a motion arguing that the summons had been issued outside of that period. Our ruling was inherently in the context of a section 2-619 motion, and we resolved only the timeliness issue raised in the context of that motion.

¶ 19                              E. Remand

¶ 20        On remand, plaintiff filed its section 3-105 affidavit designating the last-known address of each defendant upon whom service of summons was to be made. The affidavit listed the QMG defendants, the IDPH, and the Board. New summonses were issued to those defendants named in the affidavit and each was served; new summonses were not issued for the individual defendants.

¶ 21                      1. *QMG's Renewed Motion to Dismiss*

¶ 22        On May 2, 2024, QMG filed a renewed motion to dismiss, again arguing that plaintiff's summonses were untimely issued and further that they were deficient. The motion was fundamentally an attempt to relitigate the question of when the permit letter was served on the administrative parties and, consequently, when the 35-period for service in the circuit court review began to run; we refer to this issue under the general term of "timeliness." No other defendants moved to dismiss or joined in QMG's renewed motion.

¶ 23 On the issue of whether the summonses were timely issued, QMG argued that service occurred on May 4, 2022, because (1) QMG acknowledged service on May 4, 2022, (2) QMG consented to e-mail receipt of the May 4 permit letter, and (3) the Board established electronic service through custom and practice. In support, QMG filed the acknowledgement of service of Williamson, who stated that she received the May 4 permit letter electronically. QMG also filed Williamson's affidavit, in which she stated that she consented to electronic service when she completed the application for permit and she listed her email address as recipient of all Board communications regarding the permit. A copy of the application was also attached to the renewed motion, which asks for contact information (including an email address) of a "primary contact" ("Person to receive ALL correspondence or inquiries") and a "post permit contact" ("Person to receive all correspondence subsequent to permit issuance"). No provision in the application specifically asked for the contact information of a person designated to receive service of the administrative decision.

¶ 24 QMG's motion further contained the affidavit of Alesandra Schneider, a senior paralegal in the offices of QMG's attorneys, who attested to the Board having electronically sent 187 permit approval letters issued from August 9, 2019, to May 1, 2024—the date the affidavit was executed—and 268 exemption approval letters issued from August 7, 2019, through May 1, 2024. According to the affidavit, the letters were transmitted electronically. Schnieder further stated that she was "not aware of any objections in relation to the listed method of service made by the applicants that were issued."

¶ 25 Concerning the alleged insufficiency of the summonses, QMG argued that the summons as originally issued were deficient because plaintiff failed to (1) list the correct agent and address for service related to QMG Hospital, "a necessary party to the litigation (incorrectly

listing the registered agent as the [Board] and providing the [Board]'s address)"; (2) utilize the form required by Illinois Supreme Court Rule 291(a) (eff. Jan. 1, 2018) and the Review Law; (3) provide correct instructions about the responsive pleading requirement required; and (4) provide the correct responsive pleading deadline (listed 30 days instead of 35 days). QMG further argued that the deficiencies were significant and could not be cured by amendment or by reissuance of the summons.

¶ 26                                    2. *The Board's Answer*

¶ 27         On June 17, the Board filed a motion for leave to file its answer under seal. The answer consisted of the Board's 4,200-page administrative record. According to the Board, "full redaction of the administrative record as contemplated by Supreme Court Rule 138 would be unduly burdensome." See Ill. S. Ct. R. 138 (eff. Jan. 1, 2018). On June 28, the court entered an order stating the motion for leave was "entered and continued." The record does not reflect whether this motion was ever decided.

¶ 28                                 3. *Plaintiff's Motion to Strike*

¶ 29         On June 13, plaintiff moved to strike QMG's renewed motion to dismiss, arguing that it violated the scope of the remand by rearguing the timeliness issue. According to plaintiff, timeliness was addressed by the appellate court in *Blessing I*, and the remand was limited solely to considering the issues of the sufficiency of summonses.

¶ 30                              4. *Court Ruling on Motion to Strike*

¶ 31         On September 26, 2024, the circuit court denied plaintiff's motion to strike, finding that the scope of the remand did not specifically prohibit the court from considering the issue of timeliness. Specifically, the court remarked,

                "The issue of whether the permit Letter was properly served was not adjudicated at

the Motion to Dismiss or the Motion for reconsideration stages before this Court. Moreover, and given Blessing's repeated admissions (albeit not legally binding) that the summonses were untimely when Blessing appeared before this Court, the summonses timeliness issue was not in dispute at the Motion to Dismiss stage."

¶ 32 According to the circuit court, "The Appellate Court simply reversed this Court's finding with respect to the binding effect of Blessing's admissions." Moreover, the court found that QMG was not prohibited on remand from establishing that service was effected electronically. Finally, it noted that plaintiff's counsel, during oral arguments in *Blessing I*, admitted that "nothing would prevent [defendants], if they had the evidence, from raising a timeliness issue on summary judgment."

¶ 33                                5. *Defendants' Supplementation*

¶ 34 While plaintiff's motion to strike was pending, QMG filed a supplemental brief in support of its renewed motion to dismiss, adding an additional argument based on estoppel. QMG argued that supplementation was necessary due to "material developments" since the filing of its motion to dismiss which it believed were "relevant to the Court's consideration of [the matters before it] and constitute[ ] additional grounds for dismissal of the Complaint." QMG alleged that since the filing of its renewed motion to dismiss, plaintiff had filed a legal malpractice claim against its former counsel relating to the filing of summons within 35 days of the Board's May 4, 2022, permit letter. According to QMG, "In doing so, Blessing is taking the position in the malpractice proceeding that the 35-day period in which Blessing was required to cause summonses to issue started to run on May 4, 2022 and that summonses were not timely issued." QMG argued that plaintiff should be estopped from taking a position in the legal malpractice action "wholly at odds with the position it asserted before the Appellate Court in this proceeding." QMG attached

as an exhibit a copy of the complaint filed by Blessing Hospital against Benesch Friedlander Coplan & Aronoff LLP, in Cook County case No. 24-L-007770, filed on July 15, 2024.

¶ 35        Plaintiff objected to the supplementation and requested that it be stricken, arguing that the briefing schedule on the renewed motion to dismiss did not contemplate supplemental briefs. Plaintiff further argued that it had not taken an inconsistent position.

¶ 36                        6. *Plaintiff's Legal Malpractice Complaint*

¶ 37        Although referenced as the basis for QMG's supplemental filing, we note separately that plaintiff filed a legal malpractice action in Cook County in July 2024 against its former trial counsel. The complaint sought recovery in professional negligence for "incremental litigation costs" and declaratory relief for "future costs." In paragraph 30 of the complaint, plaintiff alleged:

> "Defendants have breached the professional duties that they owed to Blessing in connection with the Underlying Lawsuit by, *inter alia*, advising Blessing that summonses had to issue within 35 days of the date of the May 4, 2022 Board Letter, and then not causing summons to issue on or before the 35th day after the date of the May 4, 2022 Board letter (*i.e.*, June 8, 2022)."

¶ 38        Plaintiff contended that it relied to its detriment on this advice and that, had counsel taken the necessary steps as it had advised, plaintiff would not have incurred and paid attorneys' fees and costs to litigate (1) the timeliness of summonses in connection with the motion to dismiss, (2) the motion for reconsideration, and (3) the appeal in *Blessing I*.

¶ 39        According to the complaint, plaintiff "repeatedly requested" that its former counsel "enter into a tolling agreement with Blessing with respect to the claims raised in this lawsuit," deferring litigation of such claims until after resolution of the instant lawsuit, but counsel "refused

these requests." There is no indication in the record that this litigation has been concluded.

¶ 40                                  7. *Ruling on Motion to Dismiss*

¶ 41         On January 15, 2025, the circuit court granted QMG's renewed motion to dismiss, finding that the permit letter was "effectively served on QMG on May 4, 2022," and, therefore, the summonses issued on June 15, 2022, were untimely. The court found that, alternatively, the summonses as initially issued were "substantially deficient" and could not be cured by subsequent amendment or reissuance. Finally, the court concluded that plaintiff was estopped from taking the position that summonses were not issued on May 4 by its pleadings in its legal malpractice action brought against its former trial counsel.

¶ 42         Concerning the timeliness finding, the circuit court concluded that (1) QMG acknowledged receipt of service on May 4, 2022, (2) QMG consented to electronic service in its application for permit, and (3) custom and practice established that the Board issued its permit letters via electronic service. The court further found that plaintiff had accepted electronic service in another case and, as such, was estopped from taking a conflicting position in this case.

¶ 43         We note that the dismissal order did not reference the State defendants and was entered solely in reference to QMG. We also point out that the circuit court did not specifically address the good-faith exception, instead noting in a footnote that it had "already determined twice that the good-faith exception to dismissal does not apply."

¶ 44         On February 13, plaintiff filed a timely notice of appeal.

¶ 45                                  8. *Appellate Motions*

¶ 46         As this case has proceeded through briefing, both parties filed motions before this court. First, QMG filed a motion to take judicial notice of two exhibits from plaintiffs' legal malpractice claim filed against its trial counsel. Exhibit 1 consisted of the answer filed by

plaintiff's former trial counsel Benesch and related exhibits, and exhibit 2 is plaintiff's reply to Benesch's affirmative defenses.

¶ 47            Plaintiff objected to defendants' motion for judicial notice and filed its own motion to strike argument III(B)(iv) of defendants' appellee brief, arguing that without the documents referenced by QMG's motion for judicial notice there was no evidence to support that section's argument that "Blessing received a benefit simply by filing, and then continuously maintaining, this [administrative review] action." According to section III(B)(iv) of QMG's brief, "[i]n continuing to maintain this action, Blessing has benefited by maintaining its Sole Community Hospital status and thus, not experienced an admitted annual revenue loss *** for the past three years."

¶ 48            Third, QMG filed a motion to strike two documents from plaintiff's appellant brief appendix (A-120 to A-136, A-137 to A-158), arguing that neither document had been filed with or considered by the circuit court and that both were prepared by plaintiff's counsel for the appeal. The documents in question are a redlined version comparing the proposed and actual circuit court orders denying Blessing's motion to strike and granting QMG's renewed motion to dismiss. The documents were created by plaintiff's counsel and are based on court orders found in the record. Plaintiff opposed the motion and, while admitting the appendix documents were counsel-prepared, redlined versions of a proposed court order and the order as entered, argued that both documents (the proposed order and final order) were contained in the record. Plaintiff further argued that its redlined versions were intended to support its assertion that the court simply entered QMG's proposed orders verbatim.

¶ 49            These motions were taken with the case and will be addressed below.

¶ 50                                II. ANALYSIS

¶ 51 Plaintiff appeals from the circuit court's dismissal of its administrative review, arguing that the court erred in granting QMG's renewed motion to dismiss. As part of that argument, plaintiff argues that the court erred in denying its motion to strike the renewed motion to dismiss because QMG sought to relitigate issues decided in *Blessing I*.

¶ 52                                     A. Jurisdiction

¶ 53 Although not raised by the parties, this court has an independent obligation to consider its own jurisdiction. *In re Estate of Johnson*, 2023 IL App (4th) 220488, ¶ 14 (citing *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 542 (2011)). It is well settled that every final judgment in a civil case is appealable pursuant to Illinois Supreme Court Rule 301 (eff. Feb 1, 1994)). Jurisdiction is vested in the appellate court to hear the appeal of that final judgment upon the filing of a notice of appeal. *In re Application of the County Treasurer*, 208 Ill. App. 3d 561, 564 (1990).

¶ 54 The circuit court's order granting QMG's renewed motion to dismiss refers to only the QMG defendants as the moving parties and does not mention any of the State defendants. Indeed, the remaining defendants did not file a renewed motion, nor have they joined in this appeal. Thus, our initial question is whether the circuit court's January 15, 2024, order finally disposed of all claims and the rights of all parties. If not, we lack jurisdiction under Rule 301, and an interlocutory appeal would be impermissible given the lack of a finding under Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)).

¶ 55 In determining whether an order is final, we should look to its substance and effect rather than its form. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 350 (2002) (citing *In re J.N.*, 91 Ill. 2d 122, 128 (1982)). Moreover, the question of finality must be considered with reference to the particular facts and circumstances of each case. *Mills v. Ehler*, 407 Ill. 602, 609

(1950).

¶ 56　　　Here, the case brought by plaintiff sought only one thing: administrative review of the Board's decision. While several parties were added to ensure that no necessary party was overlooked, doing so does not change the singular nature of the action. QMG did not seek dismissal of *itself* from the case; it sought dismissal of the entire case. So construed, we conclude that the circuit court's dismissal order effectively resolved the entire case, leaving no issue or party's status unresolved. Consequently, we find that it is a final order appealable under Rule 301 (Ill. S. Ct. R. 301 (eff. Feb. 1, 1994)), so we have jurisdiction over the appeal.

¶ 57　　　　　　　　　　　B. Pending Motions

¶ 58　　　We next turn to the various motions filed on appeal.

¶ 59　　　　　　　1. *Motion for Judicial Notice and Motion to Strike*

¶ 60　　　QMG moved for this court to take judicial notice of two pleadings filed in plaintiff's legal malpractice claim pending in Cook County. Plaintiff has objected and has further moved to strike the argument at section III(B)(iv) of QMG's brief on the ground that, without the information provided by the two exhibits, QMG has nothing supporting its claims. It is well settled that judicial notice cannot be used to introduce new evidentiary material that was not considered by the fact finder. *People v. Cline*, 2022 IL 126383, ¶ 32; *Alms v. Peoria County Election Comm'n*, 2022 IL App (4th) 220976, ¶ 32; see *In re R.M.*, 2022 IL App (4th) 210426, ¶ 21 (noting that attachments to briefs cannot be used to supplement the record on appeal and reviewing court cannot consider evidence that is not part of the record).

¶ 61　　　We deny QMG's motion asking us to take judicial notice. The documents attached are not part of the record before the circuit court. We further grant plaintiff's motion to strike QMG's arguments as found in section III(B)(iv) of the appellee brief, as those arguments are based

exclusively on the documents not presented below.

¶ 62    2. *QMG's Motion to Strike Portions of Plaintiff's Appendix*

¶ 63    Defendant QMG moved to strike from plaintiff's appendix two redlined versions of the actual orders entered denying the motion to strike and granting the motion to dismiss, specifically the documents located at A-120 to A-136 and A-137 to A-158. QMG argues that neither redlined document had been admitted before the circuit court and that they were prepared by plaintiff's counsel to assist the court on appeal. Plaintiff admits that the two documents are counsel-prepared, redlined documents, but it argues that both the proposed and entered orders are contained within the record. It further argues that the redlined versions support their argument that the circuit court simply entered defendants' proposed orders verbatim.

¶ 64    We note that Illinois Supreme Court Rule 342 (eff. Oct. 1, 2019) says, "[t]he appellant's brief shall include, as an appendix, *** any opinion, memorandum, or findings of fact filed or entered by the trial judge ***[and] any pleadings or other materials *from the record* that are the basis of the appeal or pertinent to it." (Emphasis added.). Further, the general law provides that "[a]ttachments to briefs which are not otherwise of record are not properly before the reviewing court and cannot be used to supplement the record." *Suarez v. Pierard*, 278 Ill. App. 3d 767, 770 (1996). Although the individual proposed orders and the final written orders are contained within the record, the redlined version is not. If it becomes necessary—and, for the reasons stated in the next paragraph, we doubt that it will—the court could compare the two versions on its own without examination of the redlined version.

¶ 65    We also note that plaintiff's argument that the judge simply signed the proposed order verbatim is irrelevant to any issue on appeal. Once a judge signs an order, it becomes the ruling of the court; it matters not where the draft language originates, only that the judge adopted

the content of the proposed order. Accordingly, we grant QMG's motion to strike and decline to consider the two appendix documents (A-120 to A-137 and A-138 to A-158) in our deliberations.

¶ 66                    C. Propriety of QMG's Renewed Motion to Dismiss

¶ 67            Plaintiff challenges the circuit court's denial of its motion to strike, arguing that QMG's renewed motion to dismiss essentially gives it two bites at the apple. At the core of plaintiff's argument is its contention that this court's holding in *Blessing I* precluded QMG from renewing its motion to dismiss based on timeliness grounds. The circuit court concluded that it was not so limited, so it denied the motion to strike and allowed QMG to introduce new evidence on the question of when the May 4 permit letter was served (thus starting the running of the 35-day period). Rather than considering this issue with respect to Blessing's motion to strike in isolation, we consider it as part and parcel of the circuit court's ruling on the merits of QMG's motion to dismiss.

¶ 68            Our decision in *Blessing I* made clear our intention. In that appeal, all defendants moved to dismiss the administrative complaint on the assertion that the summonses were not timely issued. However, defendants failed to establish the date of service of the Board's May 4 permit letter on the interested parties in the administrative matter, instead assuming that it was the day of electronic transmission. In reversing the circuit court's 2022 order dismissing plaintiff's complaint, we stated:

> "We conclude that defendants failed to meet their burden of proof to establish when service occurred and, without that date, failed to establish that the summonses issued were not timely. In so ruling, we are not holding, as plaintiff urges, that the 35-day time period remains open indefinitely. Rather, we merely conclude that, on the facts of this case, defendants failed to carry their burden to

establish that the summonses were not timely issued in the circuit court." *Blessing I*, 2024 IL App (4th) 230282, ¶ 51.

¶ 69 In short, defendants failed to carry their burden on the initial section 2-619 motion to dismiss, so we held that the motion should have been denied. "If the defendant fails to satisfy her initial burden [in a motion to dismiss], the trial court must deny the motion." *Anderson v. Smith*, 2025 IL App (4th) 241076, ¶ 72. However, once the circuit court's order granting the motion to dismiss was reversed, there remained issues beyond timeliness raised in the motion that needed to be addressed. In *Blessing I*, we remanded this case for a determination of the issues raised in defendants' motions that had not been resolved by the circuit court, including the question of the sufficiency of the summonses.

¶ 70 Our prior decision effectively decided the timeliness argument within the context of a section 2-619 motion, and our ruling comes with consequences.

¶ 71 First, there is the law of the case doctrine, which "prohibits the reconsideration of issues that have been decided by a reviewing court in a prior appeal." *In re Christopher K.*, 217 Ill. 2d 348, 363 (2005). Here, our decision—which was specific to the issue of timeliness in a section 2-619 context—ends the circuit court's ability to revisit the same issue in the same context. The law of the case doctrine would not prevent the circuit court from addressing issues we have not already addressed, but the ones we have decided are off limits on remand. Furthermore, the issue decided in *Blessing I* was raised in the context of a section 2-619 motion, which, among other things, required the court to assume the truth of the well-pleaded allegations of plaintiff's complaint. The same issue might be properly raised on remand in different contexts where it would be decided under a different standard, such as at trial or pursuant to a different type of dispositive pretrial motion. It is, however, improper for QMG to "renew" a motion under the same provision

of the Code raising the same issue decided on appeal, and it was improper for the circuit court to have entertained such a motion.

¶ 72 Second, and consistent with the law of the case doctrine, our prior ruling described the issues to be addressed on remand. "[W]hen a reviewing court issues a mandate, it vests the trial court with jurisdiction to take only such action as conforms to that mandate." *People ex rel. Daley v. Schreier*, 92 Ill. 2d 271, 276 (1982). "The trial court may only do those things directed in the mandate and has no authority to go beyond dictates of the mandate." *In re Marriage of Pitulla*, 256 Ill. App. 3d 84, 88 (1993). The reviewing court need not provide specific directions in remanding a cause, but the lower court must examine the reviewing court's opinion and proceed in conformity with the views expressed in it. *Barnai v. Wal-Mart Stores, Inc.*, 2021 IL App (1st) 191306, ¶ 43.

¶ 73 Here, our opinion in *Blessing I* made clear that the case was remanded "for further proceedings, including consideration of the unaddressed issues raised in the State defendants' motion to dismiss." *Blessing I*, 2024 IL App (4th) 230282, ¶ 65. Thus, the circuit court had authority to address any of the unresolved issues from the original section 2-619 motion, but it did not have authority to revisit the timeless issue in that posture. See *Schreier*, 92 Ill. 2d at 276-77 ("Any other order issued by the trial court is outside the scope of its authority and void for lack of jurisdiction."); *Pitulla*, 256 Ill. App. 3d at 88 (" 'The trial court may only do those things directed in the mandate and has no authority to go beyond dictates of the mandate.' " (quoting *Fidelity & Casualty Co. of New York v. Mobay Chemical Corp.*, 252 Ill. App. 3d 992, 997 (1992)).

¶ 74 Plaintiff is correct that the circuit court, by allowing QMG to renew its motion to dismiss—which it had already failed to adequately support—effectively gave QMG a second chance to litigate a matter that was not adequately presented in its first motion to dismiss.

Accordingly, we reverse the circuit court's September 26, 2024, order, to the extent that it purports to address, in the context of a section 2-619 motion, the issue of timeliness. Specifically, this means that the question of when the statutory 35-day period began to run—as triggered by service of Board's permit letter—is still undetermined.

¶ 75    Finally, we emphasize that our decision in *Blessing I* and our decision here are both made in the context of section 2-619, the vehicle through which the timeliness issue was presented. Our conclusion that the effective dates of the 35-day period remain undetermined necessarily implies that this is a matter that may yet require determination. Whether that issue is raised by a dispositive motion brought pursuant to some other provision of the Code or at final hearing of the appeal, we do not intend our decision here to foreclose or decide the matter if it is subsequently raised in some other posture.

¶ 76                                    D. Judicial Estoppel

¶ 77    Next, plaintiff challenges the circuit court's finding that it is estopped from challenging the date of service because of the positions taken in its legal malpractice lawsuit against its former trial counsel. QMG's supplemental brief argued that plaintiff pleaded in the malpractice case that the Board's May 4, 2022, permit letter was served on the day it was issued and that the time for filing summons commenced at that time.

¶ 78                            1. *Elements of Judicial Estoppel*

¶ 79    Judicial estoppel is an equitable doctrine invoked by the court at its discretion. *Seymour v. Collins*, 2015 IL 118432, ¶ 36 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), and *People v. Runge*, 234 Ill. 2d 68, 132 (2009)). As the United States Supreme Court has observed, the uniformly recognized purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from "deliberately changing positions" according to the exigencies

of the moment. (Internal quotation marks omitted.) *New Hampshire*, 532 U.S. at 749-50. Judicial estoppel applies in a judicial proceeding when litigants take a position, benefit from that position, and then seek to take a contrary position in a later proceeding. *Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi*, 342 Ill. App. 3d 453, 460 (2003). Judicial estoppel is an extraordinary doctrine that should be applied with caution. *Colon v. Illinois Central R.R. Co.*, 2024 IL App (1st) 221841, ¶ 57.

¶ 80    This court has identified five prerequisites as "generally required" before a court may invoke the doctrine of judicial estoppel. "The party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it." *Seymour*, 2015 IL 118432, ¶ 37 (citing *Runge*, 234 Ill. 2d at 132). If all prerequisites have been established, the court must then determine whether judicial estoppel should be applied. *Duniver v. Clark Material Handling Co.*, 2021 IL App (1st) 200818, ¶ 14. Multiple factors may affect that decision, including the significance or impact of the party's action in the first proceeding and " 'whether there was an intent to deceive or mislead, as opposed to the prior position having been the result of inadvertence or mistake.' " *Id.* (quoting *Seymour*, 2015 IL 118432, ¶ 47).

¶ 81    Although matters of discretion are generally reviewed under an abuse of discretion standard, where the exercise of the court's discretion is sought in the context of a dispositive motion and results in the termination of the litigation, it is reviewed *de novo*. *Seymour*, 2015 IL 118432, ¶ 49; *Duniver*, 2021 IL App (1st) 200818, ¶ 13.

¶ 82    2. *The Effect of Plaintiff's Legal Malpractice Complaint on This Litigation*

¶ 83    We begin by reviewing the actual language used in plaintiff's legal malpractice

complaint against its former counsel. In paragraph 30 of the complaint, plaintiff alleged:

> "Defendants have breached the professional duties that they owed to Blessing in connection with the Underlying Lawsuit by, *inter alia*, advising Blessing that summonses had to issue within 35 days of the date of the May 4, 2022 Board Letter, and then not causing summons to issue on or before the 35th day after the date of the May 4, 2022 Board Letter (*i.e.*, June 8, 2022)."

¶ 84    Plaintiff's allegation in the malpractice suit is much more nuanced than suggested by QMG. It alleges a statement made by plaintiff's lawyers, not an assertion of fact by plaintiff. We note that judicial estoppel applies only to statements of fact, not legal opinions or conclusions. *Muhammad v. Abbott Laboratories, Inc.*, 2022 IL App (1st) 210478, ¶ 39. The statement made in the malpractice case about the applicable statutory deadline is inherently one steeped in legal opinion, making it an inappropriate basis for the application of judicial estoppel.

¶ 85    More fundamentally, QMG has failed to establish the fifth element of estoppel: that plaintiff *succeeded* in one proceeding and received a benefit. *Seymour*, 2015 IL 118432, ¶ 37. Plaintiff has made what are, at best, conflicting allegations in the two proceedings, but it has not yet prevailed in either matter. It is not the making of a conflicting allegation that triggers judicial estoppel, but succeeding on it. See *People v. Johnson*, 2022 IL App (1st) 201371, ¶ 122 (holding that judicial estoppel could not be employed against a party who had not yet succeeded in the other case). On its face, QMG's judicial estoppel argument fails.

¶ 86    Accordingly, we conclude that the circuit court's dismissal order cannot be sustained on the basis of judicial estoppel.

¶ 87                          E. Sufficiency of Summonses

¶ 88    Lastly, we address the sufficiency of the initial summonses issued in June of 2022.

The circuit court found four purported deficiencies in the original summonses, namely, that plaintiff failed to (1) list the correct agent and address for service related to QMG Hospital, "a necessary party to the litigation (incorrectly listing the registered agent as the HFSRB and providing the HFSRB's address)"; (2) utilize the form required by Rule 291(a) and the Review Law; (3) provide correct instructions about the responsive pleading requirement required; and (4) provide the correct responsive pleading deadline (listed 30 days instead of 35 days). QMG also contended that plaintiff failed to file an affidavit pursuant to section 3-103 listing the name of each defendant it intended to sue. 735 ILCS 5/3-105 (West 2024).

¶ 89    We undertake examination of this issue with some caution. As noted in *Blessing I* and as stated above, it has not yet been established when the statutory 35-day period commenced; the date of service of the Board's permit letter remains an open question. The alleged defects in the 2022 summonses may be immaterial if the time for issuing summons has not yet expired or possibly had not expired when the 2024 summonses were issued. However, as this was the specific issue we directed the circuit court to address on remand, and because it has been raised and fully argued here, we address the sufficiency of the 2022 summonses independent of the question of whether they were timely issued.

¶ 90                    1. *Section 3-105 Summonses*

¶ 91    Section 3-105 of the Review Law states that the "form of the summons and the issuance of alias summons shall be according to rules of the Supreme Court." 735 ILCS 5/3-105 (West 2024). Specifically, summons for proceedings under the Review Law are governed by Rule 291(a), which provides:

> "(a) Form of Summons. The summons in proceedings under the [Review Law] shall be prepared by utilizing, or substantially adopting the appearance and

content of, the form provided in the Article II Forms Appendix.

(b) Service. The clerk shall promptly serve each defendant by mailing a copy of the summons by registered or certified mail as provided in the [Review Law]. Not later than 5 days after the mailing of copies of the summons, the clerk shall file a certificate showing that the defendants were served by registered or certified mail pursuant to the provisions of the [Review Law].

(c) Appearance. The defendant shall appear not later than 35 days after the date the summons bears." Ill. S. Ct. R. 291(a), (b), (c) (eff. Jan. 1, 2018).

Rule 291(a) requires only substantial compliance with the form of summons contained in the rule. *Wilson v. Regional Board of School Trustees of Monroe-Randolph Counties*, 179 Ill. App. 3d 485, 488 (1989).

¶ 92                                    a. Standard of Review

¶ 93        Defendants have raised their challenges to summonses by way of a section 2-619(a) motion, which we review under a *de novo* standard. *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 17. Moreover, the interpretation of a supreme court rule (*People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007)) or a statute (*In re Marriage of Petersen*, 2011 IL 110984, ¶ 9) is reviewed *de novo*.

¶ 94                                    b. Purpose of Summons

¶ 95        A summons serves to "notify a party that an action has been commenced against him." *In re Application of the County Treasurer & ex officio County Collector*, 307 Ill. App. 3d 350, 355 (1999); *BanUnited, National Ass'n v. Giusti*, 2020 IL App (2d) 190522, ¶ 27. In determining whether a summons was sufficient to provide the opposing party with notice of the action, "we adhere to the principle that a court should not elevate form over substance, but should

construe a summons liberally." *In re Application of the County Treasurer & ex officio County Collector*, 307 Ill. App. 3d at 355.

¶ 96                              2. *Claimed Deficiencies*

¶ 97          The QMG defendants claim that the summonses were deficient because they were not issued pursuant to Rule 291(a), incorrectly stated that the recipient was to respond within 30 days, and failed to state how the recipient was supposed to respond. The 2022 summonses were issued on general summons forms and required that a defendant respond by filing "Appearance and Answer/Response forms with the court within 30 days" of service, rather than the 35 days prescribed by the Review Law. We note that *all* defendants, despite their contentions regarding the sufficiency of the initial summonses, entered their appearances well within the 35 days provided under the Review Law. Apparently, none of them were so confused or misled by the claimed deficiencies that they could not file an appropriate response to the administrative review action.

¶ 98          The purpose of a summons is to "notify a party that an action has been commenced against him." *In re Application of the County Treasurer & ex officio County Collector*, 307 Ill. App. 3d at 355. Here, that purpose was accomplished. We also observe that, "[t]he 35-day period for the issuance of summons *** is mandatory, not jurisdictional, and the failure to comply with that requirement will not deprive the court of jurisdiction." *Spicer, Inc. v. Regional Board of School Trustees of Lasalle County*, 212 Ill. App. 3d 16, 19-20 (1991) (citing *City National Bank & Trust Co. v. Property Tax Appeal Board*, 97 Ill. 2d 378, 381-82 (1983)). Given defendants' timely responses, any deficiency in the form of the summonses had no impact on their effectiveness in giving defendants appropriate notice.

¶ 99          We acknowledge the cases recognizing that the filing of a motion to dismiss in the

face of a purportedly deficient summons does not amount to waiver of the right to challenge a plaintiff's compliance with section 3-105's summons requirements. See, *e.g.*, *Lacny v. Police Board of Chicago*, 291 Ill. App. 3d 397, 402 (1997) ("[S]ince the defendant's defense here is not a jurisdictional argument, the plaintiff cannot contend that the defendant waived the issue by appearing and filing a motion to dismiss."); *Brazas v. Property Tax Appeal Board*, 309 Ill. App. 3d 520, 528 (1999). Here, we are basing our findings not on waiver, but on the notion that notice is the touchstone of service of summons and that, at least as to these alleged defects, the purported deficiencies did not thwart the statutory purpose of providing notice. The summonses, therefore, substantially complied with Rule 291(a).

¶ 100        A somewhat different issue arises regarding the sufficiency of the 2022 summons issued for QMG Hospital. According to QMG Hospital, the summons was fatally deficient because, although it named the correct party, it named the wrong registered agent. It further maintains that the question of whether the 2022 summons was deficient is controlled by *Lockett v. Chicago Police Board*, 133 Ill. 2d 349 (1990), *overruled on other grounds*, *Nudell v. Forest Preserve District of Cook County*, 207 Ill. 2d 409, 420 (2003), which held that the failure to name and serve a necessary party in an administrative review requires dismissal. We find *Lockett* factually distinguishable, however, as the plaintiff there failed to name a necessary party in the administrative complaint and failed to issue a summons at all.

¶ 101        Here, a complaint naming QMG Hospital *was timely filed*. Likewise, summons was issued to QMG Hospital, although its timeliness remains in dispute because the span of the effective 35-day period remains an open question not to be answered here. The issue, therefore, is the *adequacy* of the issued summons, and whether it was so inadequate that it defeats the statutory requirement for its issuance. In *Lockett*, the court refused to allow amendment to cure the failure

to file the complaint at all. *Id.* at 355-56. This is, of course, appropriate because the filing of the complaint is jurisdictional. *Nudell*, 207 Ill. 2d at 422. But that is not the issue before us; here we are concerned with a mandatory, but nonjurisdictional, requirement concerning the *issuance* of summons.

¶ 102 Implicit in QMG's position is that the summons issued to QMG Hospital had to be sufficient in all respects when it was issued or we should not consider it to have been issued at all. That is a draconian interpretation of the statute and one that is not supported by its terms. We note that the statute explicitly contemplates the issuance of an "alias summons *** according to rules of the Supreme Court." 735 ILCS 5/3-103 (West 2024). Illinois Supreme Court Rule 103(a) (eff. July 1, 2007) provides that alias summons "shall" be issued on request.

¶ 103 Here, the record does not reflect whether service of the 2022 summons on QMG Hospital was successful or even attempted. While inclusion of the wrong agent's name could certainly have frustrated *service* of QMG Hospital's summons, there is no reason to conclude that this defeated the effect of *issuance* of the summons or that such a defect could not have been overcome by the issuance of an alias summons designating the proper agent to be served. This might have gone on to happen here except that QMG Hospital voluntarily filed its appearance, obviating the need for service of the complaint. *Guiffrida v. Boothy's Palace Tavern, Inc.*, 2014 IL App (4th) 131008, ¶ 24; 735 ILCS 5/2-301(a) (West 2024). In short, the statute required *issuance* of a summons to QMG, and this was done. 735 ILCS 5/3-105 (West 2024).

¶ 104 We find the circuit court's decision to dismiss the case based on insufficient summonses to be incorrect as a matter of law. Accordingly, we reverse the circuit court and find the 2022 summonses sufficient. Any technical deficiency in the form of the summonses was not so substantial as to warrant a dismissal of the administrative review action. Plaintiff's summonses

substantially complied with Rule 291(a).

¶ 105                          III. CONCLUSION

¶ 106          For the reasons stated above, we reverse the circuit court's judgment. We note that

any issues raised pursuant to section 2-619 have been resolved between this appeal and *Blessing I*.

¶ 107          Reversed and remanded.

*Blessing Hospital v. Illinois Health Facilities & Services Review Board*,
2025 IL App (4th) 250147

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 22-MR-238; the Hon. Adam Giganti, Judge, presiding. |
| **Attorneys for Appellant:** | William A. Davis, of Brown, Hay & Stephens, LLP, of Springfield, and Neil Lloyd, Anne Murphy, Molly L. Wiltshire, and Rachel A. Remke, of ArentFox Schiff LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Mary Clare Bonaccorsi and Sara C. Avakian, of Polsinelli PC, of Chicago, for appellees. |